John I. SMITH, Patricia N. Smith, Co–
Administrators of the Estate of Patricia
Marie Smith, Deceased and, as Parents
and Natural Guardians of Johnathon
Smith, Plaintiffs,

v.

CITY OF CHESTER, Chester–Upland
School District, Chester–Upland Board
of School Directors, City of Chester Po-
lice Department, Defendants.

No. 93–CV–5891.

United States District Court,
E.D. Pennsylvania.

Jan. 5, 1994.

Anthony F. List, List & List, P.C., Media, PA, for plaintiffs.

William F. Holsten, II, Paola F. Tripodi, Holsten & White, Media, PA, for defendants City of Chester, Chester Police Dept.

Phillip B. Silverman, Harris & Silverman, Philadelphia, PA, for defendants Chester–Upland School Dist., Brd. of Directors.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This matter concerns a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants Chester–Upland School District and Chester–Upland Board of School Directors. Plaintiffs, John I. Smith and Patricia N. Smith, initiated this action seeking damages when their daughter was killed and son was injured as they attempted to cross the street when they were walking home from school. Plaintiffs have filed a five count complaint against defendants seeking damages for negligence against each individual defendant, as well as punitive damages for willful and wanton misconduct against all four defendants. Plaintiffs claim that defendants are liable because they negligently supervised the school crossing guard, who had been assigned to the school crossing post at the intersection of Route 320 and the 1700 block of Providence Road in Chester, Pennsylvania, where the accident occurred. On the day of the accident, the school crossing guard failed to report to duty. Plaintiffs claim that the school crossing guard frequently failed to report to duty, and further, that defendants were aware of this fact.

Defendants claim that the complaint in its entirety should be dismissed against them.

First, they claim that they are immune from suit for negligence under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 *et seq.* ("the Act"). Second, they claim that they are also immune from suit for punitive damages for willful and wanton misconduct under the Act. Third, they claim that plaintiffs cannot recover on a claim of loss of consortium because Pennsylvania does not recognize such a claim with respect to the loss of a child by a parent. Fourth, they claim that defendant Chester–Upland Board of School Directors is a non-entity and cannot be sued.

In response, plaintiffs first concede that there is no cause of action for loss of consortium by parents with respect to the loss of a child. Second, plaintiffs claim that defendants are not immune under the Act because they fall within 42 Pa.C.S.A. § 8542(b)(4), which is the "trees, traffic controls and street lighting" exception to immunity under the Act. Third, plaintiffs claim that punitive damages are recoverable for willful and wanton acts by agencies under the Act. Finally, plaintiffs claim that defendant Chester–Upland Board of School Directors is an agency for purposes of the Act.

### A. Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is the appropriate method in which to challenge the legal sufficiency of a claim. *See United States v. Marisol, Inc.,* 725 F.Supp. 833 (M.D.Pa.1989). In ruling upon a 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir.1990). In so reviewing the pleadings and any materials of record, the court must accept as true all of the matters pleaded and all reasonable inferences that can be drawn therefrom, construing them in the light most favorable to the non-moving party. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3rd Cir.1990); *Hough/Loew Assoc., Inc. v. CLX Realty Co.,* 760

F.Supp. 1141, 1142 (E.D.Pa.1991). A complaint is properly dismissed if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Ranson v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988).

### B. Discussion

#### 1. Immunity for claims of negligence under the Act

We first address whether defendants are immune from suit for their alleged acts of negligence under the Act. In their complaint, plaintiffs allege that defendants "knew or should have known of the inherently dangerous conditions that existed at said crossing and they failed to exercise the proper safeguards in maintaining said crossing as they had a duty of care to the minors named herein." Complaint, para. 24. They further allege that defendants knew or should have known of the "inherently unsafe conditions existing at the crossing described" as well as of the "lack of the proper and reliable use of the manual traffic control device utilized through the school crossing guard." Complaint, paras. 39, 44. They also allege that defendants "failed to exercise reasonable and adequate alternatives for the maintenance of a safe school crossing for children at said location" and that this negligence proximately caused plaintiffs' injuries. Complaint, paras. 40, 45. Finally, they allege that defendants had the duty to supervise the crossing guard. *Id.* at paras. 41, 46.

■ Defendants claim they are immune under the Act because none of the exceptions to immunity apply in this situation. Defendants cite as support cases where school districts and agencies were immune from suit for failing to provide any sort of traffic controls. On the other hand, plaintiffs argue

that the exception to immunity for traffic control devices, 42 Pa.C.S.A. § 8542(b)(4) ("section (b)(4)") applies in this case, and that a school crossing guard constitutes a traffic control device. Plaintiffs further claim that although defendants had a discretionary duty to erect traffic control devices, once they did so by providing a crossing guard, they had a duty to supervise the guard.[1] In response, defendants cite *Erney v. Wunsch*, 35 Pa.D. & C.3d 440 (1983) where the common pleas court of York County specifically held that a school crossing guard did not constitute a traffic control device so as to come within the purview of section (b)(4).

■ It appears that this precise issue has never been considered by any of the courts in Pennsylvania with the exception of the common pleas court's decision in *Erney*. Thus, as a federal court sitting in diversity, we are faced with the difficult task of predicting how the Pennsylvania courts would decide this issue if confronted with it. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3rd Cir.1990). However, based on the Pennsylvania courts' interpretations of the Act, the reasoning of *Erney* and principles of statutory construction, we hold that a school crossing guard does not constitute a traffic control device; therefore section (b)(4) does not apply to defendants and they are immune from suit under the Act.

The Act gives a general grant of immunity to local agencies for damages caused by the agency, an employee or any other person. 42 Pa.C.S.A. § 8541.[2] However, section 8542 of the Act lists several exceptions to the grant of immunity that apply as long as certain specified conditions have been met. These conditions are as follows:

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmen-

---

1. Plaintiffs agree that there is no cause of action for failing to provide traffic control devices as that duty is discretionary. *See Majestic v. Com., Dept. of Transportation,* 144 Pa.Cmwlth. 109, 601 A.2d 386 (1991); *Bryson v. Solomon,* 97 Pa. Cmwlth. 530, 510 A.2d 377 (1986), *allocatur denied,* 519 Pa. 668, 548 A.2d 257 (1988). Thus, any attempt to construe plaintiffs' allegations

that defendants "failed to exercise reasonable and adequate alternatives for the maintenance of a safe school crossing" into such a cause of action would be futile.

2. There is no issue with respect to the applicability of section 8541 to defendants in this case.

tal immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S.A. § 8542(a). Section 8542(b) then lists eight specific acts which would result in liability by the agency. The specific provision at issue in this case is entitled "trees, traffic controls and street lighting" and abrogates immunity if there is:

A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S.A. § 8542(b)(4). Thus, in order to establish liability under this section, plaintiffs must first prove that the school crossing guard constituted a traffic control, which in turn created or constituted a dangerous condition.

Plaintiffs state that it is clear that a school crossing guard is a traffic control by virtue of the provisions of the Vehicle Code, 75 Pa. C.S.A. § 6122 ("section 6122") which grants discretionary authority to local authorities to erect "traffic control devices" on any highway within their boundaries. Plaintiffs argue that the definitions section of that statute clearly intends to include school crossing guards as a traffic control device. Under the definitions section, traffic control device is defined as "signs, signals, markings and devices not inconsistent with this title placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulation, warning or guiding traffic." 75 Pa.C.S.A. § 102. Traffic control signals are defined as "[a] device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed." *Id.* Plaintiffs argue that school crossing guards are manual traffic control devices by which traffic is alternately directed to stop and proceed.

■ We agree with plaintiffs' argument that section 6122 gives local authorities discretionary authority to erect traffic control devices. We further agree that once an agency has used its discretion and erects a traffic control device, it can be liable in negligence for failing to maintain or supervise the device if an injury occurs as a result. *See David v. Broadway Maintenance Corp.,* 451 F.Supp. 877, 880–81 (E.D.Pa.1978); *Bendas v. Township of White Deer,* 131 Pa.Cmwlth. 138, 569 A.2d 1000, 1001–1002 (1990), *allocatur denied,* 526 Pa. 639, 584 A.2d 321 (1990). However, we do not agree with plaintiffs that a school crossing guard was intended to be included as a traffic control device so as to come within section (b)(4) of the Act.

First, it is not clear that section 6122 of the Vehicle Code is applicable to defendants in this case. The statute gives discretionary authority to local authorities, however, nowhere does it refer to school boards or school districts as local authorities. *See Majestic v. Com., Dept. of Transportation,* 144 Pa. Cmwlth. 109, 601 A.2d 386, 391 (1991) (holding Vehicle Code was inapplicable to school district and only gave authority to municipalities). Even if section 6122 was applicable to defendants, its relevance to interpreting the provisions of the Act, which is a separate statute, is questionable.

Second, plaintiffs' interpretation of section 6122 to include school crossing guards is also questionable. The statute refers to traffic signals as those that are operated manually. Plaintiffs have seized upon the word "manual" to include a school crossing guard because a guard would use manual hand signals to direct traffic. However, the definition of traffic signal specifically states that it is a *device* which is operated manually. The

common definition of a device is "a mechanical contrivance." *Webster's New World Dictionary* 170 (1977). Thus, the definitions and provisions seem to contemplate some type of inanimate mechanical structure that is used. Even though the statute states a signal may be operated manually, it is referring to a device that can be operated manually, and not to a person that is manually making signals. For instance, the statute contemplates the "walk" "don't walk" signs for pedestrians which are manually operated by pushing a button (traffic is defined to include pedestrians under this statute). If the intent of section 6122 was to include persons, it would not only use the word "device."

■ Third, plaintiffs' argument ignores the language of section (b)(4) which is really at issue here. Using the principles of statutory construction, we also find that a school crossing guard was not intended by the legislature to fall within this section. The doctrine of *noscitur a sociis* is recognized in Pennsylvania, which means that the meaning of a certain word is derived from the words that accompany it. *Johnson v. McCrackin–Sturman Ford, Inc.,* 527 F.2d 257, 265 n. 14 (3rd Cir.1975) (citing *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 81 S.Ct. 1579 (1961)). Or stated another way, words in a sentence must be construed together. *United States v. Board of Finance & Revenue,* 369 Pa. 386, 395, 85 A.2d 156, 162 (1952).

Looking at section (b)(4), it refers to "a dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems. . . ." Trees, traffic signs, lights, and street lighting systems are all inanimate objects. Thus, it is likely that the legislature intended other traffic controls to consist of inanimate objects as well. Moreover, there must be a dangerous condition of the traffic control. Even if a school crossing guard was considered a traffic control device, it is difficult to conceive that a school crossing guard is in a dangerous condition or constitutes a dangerous condition simply because he or she is not present. It is likely that the legislature intended this to mean that there is some defect in an existing, inanimate traffic control device, such as the pedestrian crosswalk machine that malfunctions. Clearly, when a machine is malfunctioning, it is in a dangerous condition.

This interpretation is also consistent with decisions by the Pennsylvania commonwealth courts. As previously stated, *Erney* held that a school crossing guard could not constitute a traffic control based on these principles of statutory construction and the fact that the words surrounding "traffic control" consisted of inanimate non-human objects. Likewise, in holding that a failure to provide adequate personnel to direct, supervise and control pedestrian and vehicle traffic could not constitute a dangerous condition under sections (b)(4), (b)(6) and (b)(7) of the Act, the court in *Dorsch v. Butler Area School Dist.,* 105 Pa.Cmwlth. 519, 525 A.2d 17, 20 (1987) held that there could be no dangerous condition of that which is nonexistent.

Finally, in holding that school crossing guards do not come within this exception, we are mindful of the decisions of the Pennsylvania courts interpreting the exceptions to immunity under the Act, and that the exceptions are to be construed narrowly so as to preserve governmental immunity. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118, 1123 (1987) (citing *Casey v. Geiger,* 346 Pa.Super. 279, 499 A.2d 606 (1985)); *Wellons v. SEPTA,* 141 Pa.Cmwlth. 622, 596 A.2d 1169, 1170 (1991) (citing *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989)). *See also Aberant v. Wilkes–Barre Area School Dist.,* 89 Pa.Cmwlth. 516, 492 A.2d 1186, 1188 (1985) (holding that a school bus with lights flashing did not constitute a traffic control).[3] Thus, for all the above reasons, we hold that section (b)(4) of the Act does not apply to this situation, and therefore, defendants are immune from suit for negligence by plaintiffs.

---

**3.** Although plaintiffs cite the common pleas court case of *Romero v. Philadelphia,* 24 Phila. 159 (1991) to support their argument that a school crossing guard is a traffic control device, that case is inapposite as the court was only stating *in dictum* that the city would arguably be liable under this section if it had provided a school crossing guard that was negligent in her duties.

**152**

### 2. Willful and wanton misconduct

■ Plaintiffs also seek to recover punitive damages from defendants in the amount of fifty million dollars for their alleged willful and wanton misconduct which arose by virtue of their negligence and lack of due care under the circumstances. However, it is clear that defendants are also immune under the Act for several reasons. While section 8550 of the Act abrogates immunity of individual employees for their willful and wanton acts, it does not abrogate the immunity provided to the local agency. *Barnes v. City of Coatesville*, No. CIV. A. 93–1444, 1993 WL 259329, at 6 (E.D.Pa. June 30, 1993); *Buskirk v. Seiple*, 560 F.Supp. 247, 252 (E.D.Pa. 1983); *Kuchka v. Kile*, 634 F.Supp. 502, 513 (M.D.Pa.1985); *Marko v. City of Philadelphia*, 133 Pa.Cmwlth. 574, 576 A.2d 1193, 1194 (1990) (stating not only is city immune for willful misconduct by its employees, but punitive damages are not recoverable against the city under section 8553(c) of the Act). Moreover, section 8542 designates when the exceptions to an agency's immunity apply, and it clearly exempts liability for "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct" from this section. 42 Pa.C.S.A. § 8542(a)(2). As such, plaintiffs cannot recover damages for defendants' alleged willful and wanton conduct, and therefore Count V of the complaint must be dismissed against defendants.

### 3. Board of School Directors

Finally, we note that although defendant Chester–Upland Board of School Directors claims it is a non-entity for purposes of being sued, we decline to decide this issue as we have already held that it would be immune from suit under the Act. Additionally, we need not consider defendants' argument about recovery for loss of consortium as plaintiffs concede there is no such cause of action.

### C. Conclusion

In sum, we hold that the alleged failure by defendants to supervise a school crossing guard does not come within the exception to governmental immunity relating to dangerous conditions of traffic controls under 42

Pa.C.S.A. § 8542(b)(4). As no other exception appears to be applicable, defendants have immunity from plaintiffs' claims for negligence. Likewise, defendants are also immune under the Act for any alleged willful and wanton acts caused by them. As such, plaintiffs' complaint is dismissed as to these defendants. An appropriate order follows.

### ORDER

AND NOW, this 5th day of January, 1994, upon consideration of the motion of defendants Chester–Upland School District and Chester–Upland Board of School Directors to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and all responses thereto, it is hereby ORDERED that defendants' motion is GRANTED. Plaintiffs' complaint against said defendants is DISMISSED with prejudice.